# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued May 10, 2019                    Decided August 9, 2019

No. 18-7148

DISTRICT NO. 1, PACIFIC COAST DISTRICT, MARINE
ENGINEERS BENEFICIAL ASSOCIATION, AFL-CIO,
APPELLEE

v.

LIBERTY MARITIME CORPORATION,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:17-cv-02173)

———

*Steffen N. Johnson* argued the cause for appellant. With
him on the briefs were *William G. Miossi* and *Paul N. Harold*.

*Mark J. Murphy* argued the cause and filed the brief for
appellee.

Before: MILLETT, KATSAS, and RAO, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* RAO.

RAO, *Circuit Judge*: Liberty Maritime Corporation
(Liberty) is a shipping company that has contracted over the
past thirty years with District No. 1, Pacific Coast District,

Marine Engineers Beneficial Association, AFL-CIO (MEBA), a labor union representing supervisory employees in the maritime industry. This case arises out of an underlying dispute about whether Liberty was contractually required to hire MEBA employees on a new vessel managed by Liberty. MEBA sued in the United States District Court for the District of Columbia, claiming its contract with Liberty required the parties to submit the dispute to arbitration. The district court ruled in favor of the union, granting judgment on the pleadings under Federal Rule of Civil Procedure 12(c) and compelling arbitration. Liberty timely appealed, arguing that the district court lacked subject matter jurisdiction, or in the alternative, erred in its application of the Rule 12(c) standards.

For the reasons explained below, we agree that the district court had jurisdiction over MEBA's claim under Section 301 of the Labor Management Relations Act of 1947 (LMRA), 29 U.S.C. §§ 141 *et seq*., which provides federal jurisdiction over suits for "violation of contracts between an employer and a labor organization." *Id*. § 185(a). MEBA raised contractual issues regarding the arbitrability of the dispute and thus its claim clearly falls within the district court's statutory jurisdiction. Although Liberty alleges that the dispute primarily raised representational issues and thus should be within the exclusive jurisdiction of the National Labor Relations Board (NLRB) under the doctrine of "*Garmon* preemption," federal courts retain jurisdiction over "hybrid" claims raising both contractual and representational issues. *Dist. No. 1, Pac. Coast Dist., Marine Engineers' Beneficial Ass'n, AFL-CIO v. Liberty Mar. Corp.*, 815 F.3d 834, 840 (D.C. Cir. 2016) ("*Liberty Maritime I*"); *see also William E. Arnold Co. v. Carpenters Dist. Council of Jacksonville & Vicinity*, 417 U.S. 12, 18 (1974).

Although jurisdiction here was proper, we reverse and remand because material facts remained in dispute regarding the existence of an applicable arbitration clause, and therefore MEBA was not entitled to judgment on the pleadings under Rule 12(c).

**I.**

Appellant Liberty is a shipping company that transports commodities, vehicles, equipment, and other cargoes on the seagoing vessels it manages. Liberty's clients include the U.S. Government, the United Nations, and commercial entities such as automobile manufacturers. Liberty manages vessels transporting bulk cargo—including dry bulk, break bulk, and bagged commodities—and "roll on/roll-off" vessels, like car and truck carriers configured to transport vehicles that drive on and off the vessel. Many of these vessels are enrolled in the U.S. Maritime Security Program, a federal program that subsidizes shipping companies for national security purposes—namely, to ensure a fleet of vessels is available in the event of a war or national emergency. *See generally* 46 U.S.C. §§ 53101 *et seq.* Appellee MEBA is a labor organization that represents supervisory employees in the U.S. maritime industry at ports throughout the United States and on oceangoing vessels. On car and truck carrier vessels operated by Liberty and enrolled in the U.S. Maritime Security Program, MEBA represents licensed officers and engineers.

The parties' relationship began in 1988 when they signed two agreements: the Tanker Vessels Master Agreement and the Dry Cargo Vessels Master Agreement. Although the authenticity of some of the documents attached to the pleadings is disputed, the documents that purport to be current copies of these Master Agreements provide that "[a]ll disputes relating to the interpretation or performance of this Agreement shall be

determined in accordance with the provisions of this Section." "[T]his Section" states that grievances will be presented to a licensed personnel board consisting of two persons appointed by the union and two persons appointed by the company; if the licensed personnel board fails to resolve a grievance, an arbitrator will assume jurisdiction over the grievance.

Over the past three decades, the parties have modified their contractual relationship on numerous occasions. At this stage of the proceedings, the record includes only a few of these agreements. Both parties agree, however, they were signatories to a 2012 Memorandum of Understanding (MOU). This MOU identifies numerous prior agreements and states that prior agreements will remain in effect except as expressly modified, but the MOU does not expressly modify any arbitration clause in a manner relevant to this case.

This suit arises out of a dispute between Liberty and MEBA over a ship named the *M/V Liberty Peace*. On July 24, 2017, Liberty sent MEBA a letter stating its intention to commence managing this foreign flagged car and truck carrier vessel and operate it as a U.S. flagged vessel. In the letter, Liberty claimed the *Liberty Peace* would not fall under the parties' collective bargaining agreements and the various contractual modifications of those agreements because the vessel would not be enrolled in the U.S. Maritime Security Program. MEBA disagreed, insisting the existing agreements covered the new vessel. Although the parties met to discuss the matter, they did not resolve their dispute. In the meantime, Liberty began managing the *Liberty Peace* as the agent of a third party, and that third party entered into labor agreements with a different union.

MEBA sent Liberty a grievance letter on August 31, 2017, asserting Liberty was "in violation of the parties' collective

bargaining agreement by failing to apply the terms and conditions of the parties' labor contract" to the *Liberty Peace*. Liberty did not submit MEBA's grievance to arbitration.

MEBA subsequently filed a "Complaint to Compel Arbitration" in the United States District Court for the District of Columbia. MEBA requested the district court compel Liberty to participate in the arbitration process set forth in the parties' collective bargaining agreement and grant any other appropriate relief, including attorneys' fees and costs. MEBA attached as exhibits several documents purporting to be the two original Master Agreements, the MOU, MEBA's August 31 grievance letter, and some additional correspondence between MEBA and Liberty.

In its answer to MEBA's complaint, Liberty admitted it had signed the Master Agreements and the MOU. Liberty admitted the authenticity of the MOU, but denied the authenticity of the exhibits MEBA claimed were copies of the Master Agreements. Liberty denied that the MOU incorporated the terms of the Master Agreements and that the arbitration clauses covered the *Liberty Peace*. Liberty also denied that any labor contract or arbitration agreement with MEBA covered the *Liberty Peace*. As an affirmative defense, Liberty alleged the district court lacked subject matter jurisdiction because the suit concerned representational rights and therefore was preempted by the jurisdiction of the NLRB under the terms of the National Labor Relations Act (NLRA).

MEBA moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), and the district court granted the motion. The district court found that the Master Agreements stated, "[a]ll disputes relating to the interpretation or performance of this Agreement shall be determined in accordance with the provisions of this Section." Dist. Ct. Op.

at 3, 13. The district court concluded that this language created a presumption of arbitrability; Liberty failed to rebut the presumption; and no agreement between the parties excluded this sort of dispute from arbitration. *Id*. at 13–14. The district court also rejected Liberty's preemption argument on the grounds that federal courts have jurisdiction over contractual matters and that MEBA's suit "plainly requires deciding a contractual matter: whether the arbitration clause covers the dispute at issue." *Id*. at 10–11 n.7.

Liberty timely appealed, challenging the district court's order on jurisdictional grounds and arguing the district court violated Rule 12(c) by making findings the pleadings did not adequately support.

## II.

"The 'first and fundamental question' that we are 'bound to ask and answer' is whether the court has jurisdiction to decide the case." *Bancoult v. McNamara*, 445 F.3d 427, 432 (D.C. Cir. 2006) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)). The district court held that federal courts have jurisdiction over contractual matters under Section 301 of the LMRA, which provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, . . . may be brought in any district court of the United States having jurisdiction of the parties . . . .

29 U.S.C. § 185(a). Section 301 confers federal court jurisdiction over suits for breach of collective bargaining agreements, which are contractual. "Congress deliberately chose to leave the enforcement of collective agreements to the

usual processes of the law." *Charles Dowd Box Co. v. Courtney*, 368 U.S. 502, 513 (1962).

Nevertheless, Liberty argues the district court lacked subject matter jurisdiction over this case under the judicially created doctrine known as "*Garmon* preemption." *Washington Serv. Contractors Coal. v. Dist. Columbia*, 54 F.3d 811, 815 (D.C. Cir. 1995) (citing *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236 (1959)). This doctrine holds that "[w]hen an activity is arguably subject to § 7 or § 8 of the [NLRA], . . . the federal courts must defer to the exclusive competence of the [NLRB]." *Garmon*, 359 U.S. at 245. Suits implicating § 7 or § 8 of the NLRA are often described as "representational."

Liberty attempts to rely on this court's decision in a previous suit between Liberty and MEBA, in which Liberty raised and lost a similar jurisdictional argument. Liberty cites this case for the proposition that three categories of legal claims are preempted by the NLRA under *Garmon*: claims over which the NLRB "has already exercised jurisdiction," claims that call for "an initial decision in the representation area," and claims "in which the center of the dispute is a representational question." Appellant Br. 35–36 (quoting *Liberty Maritime I*, 815 F.3d at 841 (citations and quotation marks omitted)). Liberty urges this court to evaluate whether MEBA's claim is "primarily representational or primarily contractual," as several other circuits do. *See, e.g.*, *United Food & Commercial Workers Union, Local 400 v. Shoppers Food Warehouse Corp.*, 35 F.3d 958, 961 (4th Cir. 1994); *Local Union 204 of Int'l Bhd. of Elec. Workers, AFL-CIO v. Iowa Elec. Light & Power Co.*, 668 F.2d 413, 419 (8th Cir. 1982). Liberty claims such analysis would show this suit may fall into the purported third category of claims preempted under *Garmon*: that the center of the dispute may concern a representational matter, such as whether

MEBA or another union has representational rights over crewmembers of the *Liberty Peace*. In order to determine the true center of this dispute, Liberty argues the district court should have considered MEBA's grievance letter instead of focusing only on MEBA's complaint. Liberty contends it was legal error for the district court to have concluded that, as a matter of law, it maintained jurisdiction over MEBA's claims.

MEBA responds that Liberty's argument on appeal "conflates the type of claim with the effect of a claim's enforcement." Appellee Br. 26 (quoting *Liberty Maritime I*, 815 F.3d at 843). While the possible outcome of its suit may touch on representational issues, MEBA argues it has a contract that requires Liberty to arbitrate, and MEBA asked the district court to compel compliance with that contract. MEBA maintains this type of contractual dispute is squarely covered by Section 301 of the LMRA.

The district court properly exercised jurisdiction over MEBA's claim under the plain meaning of Section 301 as well as established Supreme Court and Circuit precedent. Section 301 covers "[s]uits for violations of contracts between an employer and a labor organization." *Liberty Maritime I*, 815 F.3d at 840 (quoting 29 U.S.C. § 185(a)). As the Supreme Court has stated, Section 301 "permits suits for breach of a collective bargaining agreement *regardless of whether the particular breach is also an unfair labor practice within the jurisdiction of the Board*." *Vaca v. Sipes*, 386 U.S. 171, 179–80 (1967) (emphasis added); *see also Carey v. Westinghouse Corp.*, 375 U.S. 261, 267–68 (1964) (holding that Section 301 gives a federal court jurisdiction over a suit to enforce an arbitration clause in a collective bargaining agreement even if the case is "truly a representation case" that could also be heard by the NLRB under Section 9 of the NLRA). Thus, the "*Garmon* doctrine is 'not relevant' to actions within the

purview of § 301" of the LMRA. *Arnold*, 417 U.S. at 16 (citing *Local 174, Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 101 n.9 (1962)). We held in *Liberty Maritime I* that federal courts and the NLRB have concurrent jurisdiction over claims that are "*both* contractual and representational." 815 F.3d at 840 (emphasis original) (citing *Arnold*, 417 U.S. at 16, and *Smith v. Evening News Ass'n*, 371 U.S. 195, 197 (1962)).

Thus, if a case is both representational and contractual, it is treated as a "hybrid" claim. *See, e.g.*, *United Parcel Serv., Inc. v. Mitchell*, 451 U.S. 56, 66 (1981) (Stewart, J., concurring in the judgment) (describing "a hybrid '§ 301 and breach of duty suit'"); *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 165 (1983) (describing "hybrid § 301/fair representation litigation"); *Cephas v. MVM, Inc.*, 520 F.3d 480, 485 (D.C. Cir. 2008) (same). Such "hybrid" claims create concurrent jurisdiction for the federal courts and the NLRB, but they do not divest courts of their statutory jurisdiction. Consistent with Supreme Court precedent, that is precisely what this court has held: "Instead of forcing courts to shoehorn a hybrid claim into one category or the other, the Supreme Court has held that they retain jurisdiction to hear a contractual claim even if the claim is also representational." *Liberty Maritime I*, 815 F.3d at 840 (citing *Arnold*, 417 U.S. at 16). "[F]ederal courts have independent jurisdiction to decide cases alleging a breach of collective bargaining agreements, even though that very breach may also be an unfair labor practice." *Mullins v. Kaiser Steel Corp.*, 642 F.2d 1302, 1316 (D.C. Cir. 1980), *rev'd on other grounds*, 455 U.S. 72 (1982).

Allowing "hybrid" claims to be brought in federal court reads together the two statutes, the LMRA and the NLRA, giving effect to Congress's provision of federal court jurisdiction for contractual claims and NLRB jurisdiction over representational claims. *See Vaca*, 386 U.S. at 179–80;

*Wachovia Bank v. Schmidt*, 546 U.S. 303, 315–16 (2006) ("under the *in pari materia* canon of statutory construction, statutes addressing the same subject matter generally should be read as if they were one law") (citations and quotation marks omitted).

Liberty continues to argue that if a case is both representational and contractual, a district court must place those claims on a sliding scale to determine if the case is primarily one or the other. Neither the Supreme Court nor this court have required such an inquiry. In *Liberty Maritime I*, we described and discussed the practice in some circuits, which "examine the major issues to be decided" and "determine whether they can be characterized as primarily representational or primarily contractual" in order to dismiss "primarily representational" claims.[1] *Liberty Maritime I*, 815 F.3d at 840 (alterations, quotation marks, and citation omitted).

Liberty's reliance on the categories recognized by other circuits is misplaced. While the *Liberty Maritime I* court described the approaches from "several of our sister circuits," it did not adopt any of these competing decisions. *Id*. at 841. Because the categories identified by other circuits were not necessary to the decision, the *Liberty Maritime I* discussion of those cases "does not constitute a precedent to be followed with respect to that issue." *UC Health v. NLRB*, 803 F.3d 669, 682 (D.C. Cir. 2015) (quotation marks and citations omitted). We follow *Liberty Maritime I*, which refused to define the

---

[1] *Compare Iowa Elec. Light & Power Co.*, 668 F.2d at 419; *Paper, Allied–Indus., Chem. & Energy Workers Int'l Union v. Air Prods. & Chems., Inc.*, 300 F.3d 667, 675 (6th Cir. 2002); *Pace v. Honolulu Disposal Serv., Inc.*, 227 F.3d 1150, 1156 (9th Cir. 2000); *Shoppers*, 35 F.3d at 961; *Copps Food Ctr., Inc. v. United Food & Commercial Workers Union, Local 73–A*, No. 90–1905, 1991 WL 135508, at *2 (7th Cir. July 23, 1991) (unpublished).

"parameters of a claim that is 'primarily representational' as opposed to 'primarily contractual'" and declined "to shoehorn" a given "claim into one category or the other." 815 F.3d at 840–41.

Liberty also contends that it cannot "be ruled out, based on the pleadings alone, that the major issues to be decided are primarily representational." Appellant Br. 38. MEBA's grievance letter, like its complaint, however, raised numerous contractual issues. *See* MEBA Compl. Exhibit G ("Please be advised that Liberty is in violation of the parties' collective bargaining agreement . . . . Consider this notice of an official grievance for violation of the parties' labor contract . . . . We demand that the parties participate in expedited arbitration to resolve this contractual dispute . . . ."). And Liberty does not argue that the claim here is exclusively representational. *See Liberty Maritime I*, 815 F.3d at 843 ("*Garmon* preemption is designed to prevent a court from deciding a claim that can *only* be characterized as representational.") (emphasis added). At most, then, Liberty has left open the possibility that this case involves a hybrid claim raising both contractual and representational questions. As discussed, however, such hybrid claims are subject to the concurrent jurisdiction of the NLRB and the federal courts. *Id*. at 840. To hold otherwise "would frustrate rather than serve the congressional policy expressed in [Section 301]." *Smith*, 371 U.S. at 200.

Finally, it may be true, as Liberty stresses, that "a party's mere assertion that a claim is contractual is not an automatic ticket to federal court" under the LMRA. Appellant Br. 35 (quoting *Liberty Maritime I*, 815 F.3d at 840). A plaintiff must plausibly demonstrate the dispute falls within the terms of Section 301, and is not an "end run around [the NLRA] . . . under the guise of contract interpretation." *Pace*, 227 F.3d at 1157 (citation and alteration omitted); *accord*

*Paper*, 300 F.3d at 675 ("[S]imply referring to the claim as a 'breach of contract' was insufficient for purposes of § 301 federal courts' jurisdiction."). This proposition, however, goes little further than the axiom that a plaintiff's claim must invoke a proper basis for federal court jurisdiction within a well-pleaded complaint. *Cf. Greenhill v. Spellings*, 482 F.3d 569, 575 (D.C. Cir. 2007) (under the well-pleaded complaint rule, jurisdiction arising under federal law is established by looking to the legal basis of plaintiff's claim) (citing *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152–53 (1908)); *see also* 13D Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, & Richard D. Freer, *Federal Practice and Procedure* § 3566, at 261–62 (3d ed. 2008) ("The well-pleaded complaint rule stands for the proposition that the court, in determining whether the case arises under federal law, will look only to the claim itself.").

Put simply, Congress gave federal courts jurisdiction to hear contractual claims between labor organizations and employers in Section 301 of the LMRA. The existence of representational issues does not divest the federal courts of jurisdiction. Here, MEBA's suit alleges a breach of the parties' labor contract. The suit requires a judicial determination as to whether an arbitration clause in the agreements between Liberty and MEBA covers the dispute over the *Liberty Peace*. *See Gen. Elec. Co. v. Local 205, United Elec., Radio & Mach. Workers of Am.*, 353 U.S. 547, 548 (1957) (Section "301(a) furnishes a body of federal substantive law for the enforcement of collective bargaining agreements" that provides for suits "to enforce the obligation to arbitrate grievance disputes."); *see also Westinghouse*, 375 U.S. at 267–68. As the dispute includes contractual claims, the district court properly concluded subject matter jurisdiction was established under Section 301 of the LMRA.

**III.**

Proceeding to the merits of Liberty's appeal, we consider next whether the district court properly granted MEBA's motion for judgment on the pleadings.

**A**.

This court reviews a Rule 12(c) judgment on the pleadings de novo. *Judicial Watch, Inc. v. United States Dep't of Homeland Sec.*, 895 F.3d 770, 777 (D.C. Cir. 2018); *Mpoy v. Rhee*, 758 F.3d 285, 287 (D.C. Cir. 2014). Federal Rule of Civil Procedure 12(c) provides, "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Pleadings include any "copy of a written instrument that is an exhibit to a pleading," Fed. R. Civ. P. 10(c), such as relevant and authentic documents attached to the complaint. *See, e.g.*, *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

Very few of our precedents discuss Rule 12(c), in part because judgment on the pleadings is rare. As Wright & Miller notes, "Federal Rule 12(c) has its historical roots in common law practice, which permitted either party, at any point in the proceeding, to demur to his opponent's pleading and secure a dismissal or final judgment on the basis of the pleadings." 5C Wright & Miller § 1367, at 205; *see also Patel v. Contemp. Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) ("[A] motion for judgment on the pleadings is the direct descendant of that ancient leper of the common law, the 'speaking demurrer.'"); 5C Wright & Miller § 1369, at 265 (noting "the Rule 12(c) motion is little more than a relic of the common law and code eras").

Because Rule 12(c) provides judicial resolution at an early stage of a case, the party seeking judgment on the pleadings

shoulders a heavy burden of justification. A reviewing court "will affirm the district court if the moving party demonstrates that no material fact is in dispute and that it is entitled to judgment as a matter of law." *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1485 (D.C. Cir. 1992) (quotation marks omitted). The moving party must demonstrate its entitlement to judgment in its favor, even though the "court evaluating the 12(c) motion will accept as true the allegations in the opponent's pleadings, and as false all controverted assertions of the movant." *Haynesworth v. Miller*, 820 F.2d 1245, 1249 n.11 (D.C. Cir. 1987) (collecting cases), *abrogated on other grounds by Hartman v. Moore*, 547 U.S. 250 (2006); *see also Beal v. Missouri Pac. R.R. Corp.*, 312 U.S. 45, 51 (1941) (when the plaintiff moves for judgment on the pleadings, the defendant's "denials and allegations of the answer which are well pleaded must be taken as true"). We must give "all reasonable inferences to the opponent's pleadings" before entering a judgment on the pleadings. *Wager v. Pro*, 575 F.2d 882, 884 (D.C. Cir. 1976).

Under this standard, "a judgment on the pleadings is not appropriate" if there are "issues of fact which if proved would defeat recovery," "even if the trial court is convinced that the party opposing the motion is unlikely to prevail at trial." *Id.* "[I]f material questions of fact are presented by the pleadings, the remedy by motion for judgment on the pleadings under Rule 12(c) is not available." *Noel v. Olds*, 149 F.2d 13, 14 & n.7 (D.C. Cir. 1945) (citing James A. Pike, *Objections to Pleadings Under the New Federal Rules of Civil Procedure*, 47 Yale L.J. 50 (1937)).

**B.**

Applying these standards, MEBA's pleadings and attachments cannot carry the day. The district court erred in

granting MEBA's Rule 12(c) motion. The district court found that Liberty and MEBA agreed to arbitrate their disputes in the Master Agreements, which included clauses stating: "All disputes relating to the interpretation or performance of this Agreement shall be determined in accordance with the provisions of this Section." Dist. Ct. Op. at 13. The district court acknowledged that Liberty contested "whether a collective bargaining agreement exists between the parties under which the union can assert its right to arbitrate" and that Liberty argued the absence of such an agreement rendered judgment on the pleadings inappropriate. *Id*. at 9–10 & n.7. But the district court construed Liberty's assertion that no agreement existed as a legal conclusion, not a factual dispute. Because legal conclusions about a collective bargaining agreement are accorded "no special deference," *id*. at n.7 (quoting *Local Union No. 47, Int'l Bhd. Of Elec. Workers v. NLRB*, 927 F.2d 635, 640 (D.C. Cir. 1991)), the district court found no material fact about the contract to be in dispute.

On appeal, Liberty argues that its denial was factual, not legal, and so failure to accept its denial as true was legal error; that the complete contractual terms and scope were not before the district court on the pleadings, as recognized by the district court's opinion and the pleadings; and that without a full contract to interpret, the order to arbitrate was error. Echoing the district court, MEBA simply responds that Liberty's claim that it did not have an agreement with MEBA covering the *Liberty Peace* is a legal conclusion, not a dispute of material fact. MEBA also argues that Liberty never denied the existence of a collective bargaining agreement that contains a broad arbitration clause, nor that those agreements are still in effect. It claims that Liberty's "tactic" is "smoke and mirrors." Appellee Br. 10. MEBA maintains that Liberty contradicted its appellate theory of the case in litigating the case below, claiming that Liberty conceded the existence of the contract

and disputed only whether the contract's broad terms covered the *Liberty Peace*. Essentially, MEBA claims that Liberty's appeal is rooted in procedural technicalities, rather than a good faith factual dispute over whether an arbitration clause exists in an authentic, extant contract.

Giving all reasonable inferences to Liberty, Liberty raised material issues of fact that rendered judgment on the pleadings inappropriate. *First*, Liberty properly disputed the existence of a contract to arbitrate in this case. Without a contract binding the parties to arbitrate, an order compelling arbitration is improper. "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (quotation marks and citation omitted). Such contracts must be "interpreted as a whole." *United States v. Hunt*, 843 F.3d 1022, 1028 (D.C. Cir. 2016) (quoting Restatement (Second) of Contracts § 202(2)). And although "the determination that parties have contractually bound themselves to arbitrate disputes . . . is a legal conclusion[,] . . . the findings upon which that conclusion is based are factual." *Bailey v. Fed. Nat'l Mortg. Ass'n*, 209 F.3d 740, 744 (D.C. Cir. 2000) (quoting *Chelsea Square Textiles, Inc. v. Bombay Dyeing & Mfg. Co.*, 189 F.3d 289, 295 (2d Cir. 1999)); *see also* 11 Williston on Contracts § 30:3 (4th ed.) ("It is generally a question of fact . . . whether or not a contract . . . actually exists.").

The existence of a contract to arbitrate must first be established through a factual determination of what constitutes the parties' full agreement. As such, the district court erred when it based its conclusion of arbitrability on a contract of genuinely disputed authenticity. Liberty denied the authenticity of the copies of the Master Agreements that MEBA attached to its complaint. Specifically, MEBA alleged in its complaint:

Liberty first became signatory to a collective bargaining agreement with MEBA in 1988 when the Company signed on to both the Union's 1986-1990 Tanker Vessels Master Agreement and the 1986-1990 Dry Cargo Vessels Master Agreement. A copy of the 1986-1990 Tanker Vessels Master Agreement and Liberty's signature page is attached hereto as Exhibit A. A copy of the 1986-1990 Dry Cargo Vessels Master Agreement is attached hereto as Exhibit B. These agreements cover all U.S. flagged vessels owned, managed or operated by Liberty.

MEBA Compl. ¶ 8. In its answer, Liberty admitted that Liberty signed the Master Agreements but denied all other allegations in ¶ 8 of the complaint not expressly admitted. This included denying MEBA's allegation that Exhibits A and B were copies of the Master Agreements. Liberty also denied that even the authentic version of these agreements covered all U.S. flagged vessels managed by Liberty.

Accepting Liberty's allegations as true and making all reasonable inferences in Liberty's favor, as the Rule 12(c) standards require, means that Exhibits A and B were not authenticated copies of the two Master Agreements. Without authenticated Master Agreements, the district court lacked adequate factual support for its finding that the language of the agreements contained an extant arbitration clause. This dispute over authenticity created a material issue of fact that should have been enough to defeat MEBA's Rule 12(c) motion. *See Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002) ("Because the authenticity of the [documents] attached to the amended answer is disputed, . . . they may not be considered in deciding the Rule 12(c) motion for judgment on the pleadings."); *see also Philips*, 572 F.3d at 180.

*Second*, several disputed contract provisions were not included in the pleadings and attachments. The pleadings showed that, at least in 2012, Liberty and MEBA were parties to "a Memorandum of Understanding dated September 23, 2005, as amended; various Side Letters, dated June 8, 2005, October 28, 2005, and July 14, 2010, respectively; and Letters of Understanding, dated July 7, 2009, and February 21, 2010, respectively." MEBA Compl. Exhibit C. Liberty conceded the authenticity of the MOU. But Liberty maintained that the six documents referenced in the MOU, but not attached to MEBA's complaint, were relevant to whether any collective bargaining agreement or arbitration clause applied to the new vessel.

Liberty stresses the pre-suit correspondence attached to MEBA's complaint referenced over a dozen other documents, only three of which were attached to the complaint, and only one of which was conceded to be authentic. Liberty also disputed that a contract covered the *Liberty Peace* on the basis that MEBA failed to define "this Agreement" in the arbitration clause. Because the parties' contractual relationship has been modified by numerous agreements over the decades since the Master Agreements were signed, the record does not make clear to what "this Agreement" refers.

The district court, however, assumed these numerous side letters and letters of understanding did not modify the agreement in any meaningful way, accepting that "the grievance and arbitration procedures contained in the Tanker and Dry Cargo Master Agreements remain binding" without having reviewed the "terms and conditions of employment of the [collective bargaining agreements], side letters, and letters of understanding." Dist. Ct. Op. at 3. These assumptions were inappropriate in the face of controverted facts about the Agreements' content. The pleadings and limited attachments

did not support the conclusion that "no material fact is in dispute." *Peters*, 966 F.2d at 1485.

*Third*, the district court drew improper inferences against Liberty, the opposing party, rather than against MEBA, the moving party. The district court concluded "Liberty failed to point to any evidence to rebut the presumption of arbitrability." Dist. Ct. Op. at 14. Yet at this stage of the proceedings, it was MEBA's burden to demonstrate the existence of an applicable arbitration agreement, not Liberty's burden to rebut it. *See Beal*, 312 U.S. at 51. Although the district court correctly identified the federal policy in favor of arbitration agreements, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983), that policy becomes a presumption only when the factual existence of a contract for arbitration has been established. *See AT&T*, 475 U.S. at 648; *Bailey*, 209 F.3d at 744. The district court also found that "no agreement between the parties contains language excluding this sort of dispute from arbitration." Dist. Ct. Op. at 14. But because the whole "agreement" was not before the district court, it erred by inferring, in a manner that favored MEBA, that the "cont[ent]" and "language" of the agreement did not exclude the dispute over the *Liberty Peace* from arbitration.

*Fourth*, the district court erred by refusing to allow discovery over Liberty's objection that there was a material factual dispute about the existence of an agreement to arbitrate issues relating to the *Liberty Peace*. *See* Dec. 14, 2017 Minute Order. Discovery would have required the district court to treat MEBA's motion as one for summary judgment. Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the

motion."). Granting such discovery would have allowed Liberty to attempt to substantiate, or MEBA to refute, the claim that the complete contractual record, when read as a whole, does not require arbitration of this dispute.

Despite MEBA's claim that Liberty's argument consists of "smoke and mirrors," MEBA has not shown that Liberty lacks a good faith basis for its appeal. Parties are presumed to have a good faith basis for denying allegations, even at the pleading stage. *See Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 131 (2d Cir. 2004) ("Because attorneys, as officers of the court, are presumed not to offer in opposition" to dispositive motions "evidence that they have no good faith basis to believe will be available or admissible at trial, the burden is on the moving party."). For the reasons stated above and in light of the incomplete contractual record, we assume there was a good faith basis for Liberty to challenge judgment on MEBA's pleadings. We expect the parties, on remand, will act in good faith to narrow their dispute and avoid burying the district court with reams of contractual provisions not arguably relevant to the arbitrability issue in this case.

\* \* \*

This case involved disputed issues of material fact that rendered the unusual remedy of judgment on the pleadings inappropriate. Because the district court should have first determined whether Liberty and MEBA had a valid contract for arbitration by looking at their whole agreement, we reverse the judgment on the pleadings and remand the case for further proceedings consistent with this opinion.

*So ordered.*