# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Submitted March 27, 2020          Decided June 12, 2020

No. 19-7086

SEED COMPANY LIMITED AND SHIGERU TAMAI,
APPELLANTS

v.

WESTERMAN, HATTORI, DANIELS & ADRIAN, LLP, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:08-cv-00355)

*Creighton Magid* and *Paul T. Meiklejohn* were on the briefs for appellants.

*J. Peter Glaws IV* and *Paul J. Maloney* were on the brief for appellees Kratz, Quintos & Hanson, LLP, et al.

*Mark London* and *Lance A. Robinson* were on the brief for the Westerman appellees.

Before: HENDERSON, ROGERS and GARLAND, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: This legal malpractice case arises out of the failure of two sets of lawyers associated with two different law firms, Westerman, Hattori, Daniels & Adrian, LLP (Westerman) and Kratz, Quintos & Hanson, LLP (Kratz), to file necessary documents in the plaintiffs' patent case, allegedly resulting in the plaintiffs' loss of that case. The plaintiffs' complaint alleged four counts against the defendants: Count I against both defendants for the original malpractice, Count II alleging that Westerman negligently gave legal advice after the original decision in the patent case issued and Counts III and IV alleging that advice Kratz gave regarding the malpractice case against Westerman led to the loss of the Count I claim against both defendants through the operation of the statute of limitations. In a previous appeal, we ordered Count I against Westerman to proceed to trial, dismissed Count I against Kratz based on the statute of limitations and remanded Counts II, III and IV to the district court for further consideration. On remand, the district court dismissed Count II based on the plaintiffs' concessions and granted summary judgment to Kratz on Counts III and IV. The plaintiffs now appeal those rulings. We affirm.

## I. Background

The plaintiff-appellants, Seed Company Limited and Shigeru Tamai (Seed), filed three patent applications for a device that dispenses correctional tape. *See Seed Co. v. Westerman* (*Seed II*), 832 F.3d 325, 328–29 (D.C. Cir. 2016). Seed filed one application in Japan, one through the international Patent Cooperation Treaty (PCT) and one in the United States. *Id*. at 329. The law firm Armstrong, Westerman, Hattori, McLeland & Naughton LLP (Armstrong Westerman) handled Seed's U.S. patent application. Because the U.S. Patent Office determined that another inventor, Christopher Stevens, had already filed a patent for the same device, Seed's

U.S. application led to proceedings before the U.S. Board of Patent Appeals (Patent Board). Both Seed and Stevens sought to establish that they had filed an application to patent the device in another jurisdiction at an earlier date. Seed relied on its earlier applications in Japan and through the PCT. At the time, U.S. Patent Office regulations required applicants, if relying on an application in another jurisdiction written in a language other than English (as were Seed's PCT and Japanese applications), to include a translation and an affidavit certifying the translation's accuracy. *See* 37 C.F.R. § 1.647 (1997). Seed's then-counsel, Armstrong Westerman, failed to file a translation or affidavit of accuracy with respect to the PCT application. Nevertheless, Seed initially prevailed before the Patent Board. Stevens subsequently appealed to the United States Court of Appeals for the Federal Circuit. *See Stevens v. Tamai*, 366 F.3d 1325, 1327 (Fed. Cir. 2004).

In the meantime, Armstrong Westerman split into two different firms. One group of lawyers formed Westerman, Hattori, Daniels, and Adrian LLP (Westerman) and the other group founded the firm now called Kratz, Quintos, & Hanson LLP (Kratz). Westerman continued representing Seed in the patent case at issue. *Seed II*, 832 F.3d at 330.

Armstrong Westerman's failure to file the required translation resulted in Seed's loss on appeal, *see Stevens*, 366 F.3d at 1332, which subsequently led to the rejection of Seed's patent application, *see Seed II*, 832 F.3d at 330. According to Seed's complaint, several times after the Patent Board decision, and even after the Federal Circuit's decision, Westerman advised Seed that it was likely to obtain its patent. Seed allegedly relied on that advice when it declined to settle with Stevens.

In May 2005, James Armstrong, at that point a lawyer with Kratz, emailed Seed, advising it to initiate a malpractice suit against Westerman for the predecessor firm's failure to file the required translation and affidavit of accuracy. Armstrong subsequently advised Seed, again by email, regarding the statute of limitations and accrual date applicable to a malpractice suit against Westerman. In 2006, Seed retained its current counsel to sue both Westerman and Kratz for malpractice. *Id*. at 330.

The original complaint contained two counts. The first count was directed against both defendants, alleging that they committed malpractice by failing to file both the translation of the PCT application and an affidavit of accuracy (Count I). The second count was directed against Westerman only, alleging that it committed malpractice by giving Seed faulty legal advice *after* the Patent Board decision, and in doing so, caused Seed to forego settlement opportunities with Stevens (Count II).

Both defendants raised a statute of limitations defense to Count I and Seed then amended its complaint to add two more counts (Counts III and IV). *Id*. Seed alleged in Counts III and IV that the advice Armstrong gave it regarding the statute of limitations applicable to a malpractice claim against Westerman caused it to file its Count I claim against both Westerman and Kratz after the statute of limitations expired. Counts III and IV were expressly made "contingent" on the success of the statute of limitations defense to Count I. Seed also amended the allegations contained in Count II to allege that Westerman's advice given after the Patent Board decision caused it to delay filing its complaint. The parties dispute whether the Count II amendments included allegations that Westerman's advice harmed Seed by causing it to lose its malpractice claims against Kratz.

The defendants moved for summary judgment. In its briefs opposing summary judgment, Seed waived at least some its Count II damages. The scope of Seed's waiver, however, is in dispute. Seed contends that it waived only those damages caused by the loss of settlement opportunities allegedly caused by Westerman's advice given after the Patent Board decision. Westerman argues that Seed also waived all alleged damages that Westerman's post-Board-decision advice caused it, including the loss of its Count I claim.

The district court held that the statute of limitations did not bar any of Seed's claims. *See Seed Co. v. Westerman* (*Seed I*), 62 F. Supp. 3d 56, 65 (D.D.C. 2014). Nevertheless, it granted the defendants' summary judgment motions, finding no genuine disputes of material fact regarding the malpractice allegations, concluding that Seed waived its Count II claim and that the "contingent" Counts III and IV were moot. *Id*. at 62, 65–67.

Seed then appealed to our court. We reversed in part and affirmed in part. First, we concluded that the statute of limitations barred Seed's Count I claim against Kratz but not Westerman. *Seed II*, 832 F.3d at 331–35. Next, we concluded that Seed plausibly alleged that Westerman committed malpractice by failing to file the necessary translation and affidavit of accuracy. *Id*. at 335–38. We remanded Counts III and IV "for the district court to adjudicate them in the first instance" because it had dismissed Counts III and IV based on the erroneous finding that the statute of limitations did not bar Seed's Count I claim. *Id*. at 335. And we declined to resolve whether Seed waived all damages arising from Count II, noting that "if the allegations in the complaint cover such a claim and Seed did not concede it, Seed could seek damages based on the Westerman defendants' faulty advice about the timing of its (now dismissed) claims against the Kratz defendants." *Id*. at

339. We remanded the case to the district court for further consideration.

On remand, the defendants moved for judgment on the pleadings with respect to Count II and for summary judgment with respect to Counts III and IV. The district court found an ambiguity regarding whether Count II included allegations that Westerman's advice harmed Seed by causing it to lose its Count I claim against Kratz; construing the ambiguity in favor of Seed, it concluded that Count II alleged such damages. *Seed Co. v. Westerman* (*Seed III*), 266 F. Supp. 3d 143, 147 (D.D.C. 2017). Nonetheless, it also held that Seed had waived all damages alleged in Count II by disclaiming its intention to "pursu[e] that cause of action." *Id*. at 147. The district court also dismissed Counts III and IV on the merits, reasoning that Armstrong's advice was not the "cause" of any "injury" because his advice had involved Seed's claim against Westerman and we had allowed Seed to proceed against Westerman. *Id*. at 149–50. Seed now appeals the district court's dismissal of Counts II, III and IV.

## II. Analysis

Our review of a Rule 12(c) judgment on the pleadings is de novo. *See Dist. No. 1 v. Liberty Mar. Corp.*, 933 F.3d 751, 760 (D.C. Cir. 2019). "A reviewing court 'will affirm the district court if the moving party demonstrates that no material fact is in dispute and that it is entitled to judgment as a matter of law.'" *Id*. at 760 (quoting *Peters v. Nat'l R.R. Passenger Corp*., 966 F.2d 1483, 1485 (D.C. Cir. 1992)). A grant of summary judgment is also reviewed de novo. *See Giles v. Transit Emps. Fed. Credit Union*, 794 F.3d 1, 4 (D.C. Cir. 2015). "Summary judgment is warranted only if, viewing the evidence in the light most favorable to [the plaintiff] and giving [the plaintiff] the benefit of all permissible inferences, [the

court] conclude[s] that no reasonable jury could reach a verdict in [the plaintiff's] favor." *Id*. at 5 (quoting *Jones v. Bernanke*, 557 F.3d 670, 674 (D.C. Cir. 2009) (internal quotation marks omitted)).

## A. Count II

We begin with Seed's appeal of the Rule 12(c) dismissal of its Count II claim. On appeal, Seed contends that the district court erred by finding that it waived any claim for damages arising from its Count II allegations—in its view, it waived only its claim for damages arising from the loss of settlement opportunities, not its claim for damages arising from the purported separate claim that Westerman caused it to lose its malpractice claim against Kratz by "lulling" it into believing that it would succeed in its patent case. Westerman, for its part, contends that the district court correctly found that Seed waived all damages claims included in Count II.

Because "waiver is the intentional relinquishment or abandonment of a known right," we may not consider Seed's claim for damages under Count II if it was waived. *See United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938) (internal quotation marks omitted)). The parties point to no precedent expressly setting forth the standard of review applicable to our review of the district court's determination that a party waived a substantive claim. We conclude that the appropriate standard of review is for abuse of discretion. *Cf. Wannall v. Honeywell, Inc*., 775 F.3d 425, 428 (D.C. Cir. 2014) (reviewing for abuse of discretion district court's determination that party conceded issue by failing to brief it pursuant to district court local rules); *In re Sealed Case*, 29 F.3d 715, 719 (D.C. Cir. 1994) (reviewing for abuse of discretion district court determination of scope of waiver of attorney-client privilege).

Seed referenced the waiver issue twice in its briefing in district court in response to Westerman and Kratz's respective summary judgment motions. As to Westerman's motion, Seed explained that "[i]n Count II of [its] Amended Complaint, [Seed] allege[d] that the Westerman defendants negligently advised Seed that the examination of [its patent] application would reopen after the Interference was concluded, and that this erroneous advice caused Seed to forego a potential settlement" and so "[i]n order to avoid wasted efforts by plaintiffs or defendants, counsel for [Seed] informed counsel for defendants early in discovery that [Seed was] not claiming any damages related specifically to the settlement negotiations." *Pl.'s Mem. in Opp'n to Defs.' Mot. Summ. J.* at 9, ECF No. 138. Seed assured the court that "[t]hus, the Westerman defendants' motion is moot, because it relates to a withdrawn claim for damages relating to the . . . settlement proposals. The factual allegations contained in Count II are still relevant to the issue of defendants' 'lulling' activity, but not to any specific claim for damages." *Id.* Similarly, in its response to Kratz's motion, Seed stated that "the Kratz defendants argue that the Court should dismiss Count II, which alleges that plaintiffs received poor advice regarding settlement in January and July 2004," adding that "[p]laintiffs have already informed defendants that there were no additional measure of damages arising from Count II, and therefore, they would not be pursuing that cause of action." *Mem. in Opp. to Kratz Defs.' Mot. Summ. J.* at 6, ECF No. 137.

Seed contends that, if its statements are read in context, it is clear that it intended to abandon damages resulting from the failure of settlement negotiations in the patent dispute only. To support its contention, it points to the fact that both it and the defendants specifically mentioned only lost settlement opportunities in discussing Count II. We are not persuaded.

We are unable to read Seed's statements as anything other than a broad and unqualified waiver of damages arising from Count II. Seed may have specifically mentioned lost settlement opportunities only but that was almost certainly because it did not intend to assert any other claim for damages in Count II. Although Seed stated that it was still making a "lulling" argument, that reservation refers to the separate argument it made in district court that Westerman's "lulling" activities served to toll the statute of limitations. *See Pl.'s Mem. in Opp. to Defs.' Mot. for Summ. J.* at 35, ECF No. 138. Accordingly, the district court acted within its discretion in dismissing Count II.

## B. Counts III and IV

District of Columbia law governs Seed's malpractice claims set forth in Counts III and IV. *See Seed II*, 832 F.3d at 335. "To succeed on a legal malpractice claim, the plaintiff must show that (1) the defendant was employed as the plaintiff's attorney, (2) the defendant breached a reasonable duty, and (3) that breach resulted in, and was the proximate cause of, the plaintiff's loss or damages." *Martin v. Ross*, 6 A.3d 860, 862 (D.C. 2010) (citing *Niosi v. Aiello*, 69 A.2d 57, 60 (D.C. 1949)); *see also Biomet Inc. v. Finnegan Henderson LLP*, 967 A.2d 662, 664 (D.C. 2009) (D.C. "law requires a plaintiff to establish three elements to state a claim of malpractice: the applicable standard of care, a breach of that standard, and a causal relationship between the violation and the harm complained of."). The parties raise several issues on appeal related to Counts III and IV but we need discuss only one in order to affirm the district court: causation.

Seed contends that it raised a genuine issue of fact as to whether Armstrong's advice "caused" it to lose its Count I claim against Kratz because Armstrong's advice "misled Seed

as to the date on which Seed's damage occurred." Appellant's Br. 24 (internal quotation marks omitted). The district court concluded that the fact that Armstrong's May 20, 2005 email involved only Westerman meant that Seed could not establish that the email was the cause-in-fact of the loss of Seed's Count I claim against Kratz. But Masatoshi Shintani, the Seed employee overseeing the patent proceedings, declared that "[i]f not for Mr. Armstrong's advice, Seed would have filed suit or entered into tolling agreements with all of the defendants before May 5, 2007." Shintani Decl., ECF No. 170-1. A reasonable jury could credit Shintani's statement that Seed relied on Armstrong's advice regarding its claims against Westerman in deciding how to proceed on its claims against Kratz. If it did so, it would follow that Armstrong's allegedly negligent advice was the "but-for" cause of the loss of Seed's claims.

To succeed on its Count III and IV claims, however, Seed must also establish that Armstrong's advice was the "proximate cause" of its injuries. That it cannot do. To establish that Armstrong's negligent act was the proximate cause of its injury, Seed must establish that the injury was a foreseeable result of Armstrong's alleged breach. *See Convit v. Wilson*, 980 A.2d 1104, 1125 (D.C. 2009) ("To establish proximate cause, the plaintiff must present evidence from which a reasonable juror could find that there was a direct and substantial causal relationship between the defendant's breach of the standard of care and the plaintiff's injuries and that the injuries were foreseeable.") (quoting *District of Columbia v. Zukerberg*, 880 A.2d 276, 281 (D.C. 2005)); *see also Dalo v. Kivitz*, 596 A.2d 35, 42 (D.C. 1991) ("Proximate cause exists when there is a 'substantial and direct causal link' between the attorney's breach and the injury sustained by the client." (citation omitted)). Moreover, "an intervening act not reasonably foreseeable (sometimes referred to as a 'superseding cause')

breaks the chain of causation and relieves the wrongdoer of liability." *Dalo*, 596 A.2d at 42. Notwithstanding "'[p]roximate cause is generally a factual issue to be resolved by the jury,' . . . it becomes a question of law 'when the evidence . . . will not support a rational finding of proximate cause.'" *Majeska v. District of Columbia*, 812 A.2d 948, 950 (D.C. 2002) (quoting *Washington Metro. Area Transit Auth. v. Davis*, 606 A.2d 165, 170 (D.C. 1992)). Assuming without concluding a jury could conclude that Armstrong's advice was a but-for cause of the loss of Seed's Count I claim against Kratz, no reasonable jury could find that the loss of Seed's Count I claim against Kratz was a *foreseeable* result of that advice because Armstrong had no reason to believe that, by advising Seed about pursuing a malpractice claim against *Westerman*, Seed would rely on that advice in deciding when to bring a malpractice claim against *Kratz*. Moreover, Seed's current counsel, Dorsey & Whitney, took over the representation well before the statute of limitations ran on the Count I claim, negotiated tolling agreements regarding Seed's malpractice suit and filed the complaint against Kratz after the statute of limitations elapsed. A reasonable jury could not find that Armstrong should have foreseen that Seed would retain new counsel who would fail to independently (and correctly) review the statute of limitations applicable to Seed's claims, negotiate tolling agreements that did not adequately protect Seed's claims and file the complaint after the statute of limitations had run. Accordingly, we affirm the district court's dismissal of Counts III and IV.

For the foregoing reasons, the judgments of the district court—dismissing Count II of the Second Amended Complaint and granting summary judgment to defendant Kratz on Counts III and IV of the Second Amended Complaint—are affirmed.

*So ordered*